Opinión disidente emitida por la
Juez Asociada Señora Ro-dríguez Rodríguez,
a la que se unen el Juez Presidente Señor Hernández Denton y la Jueza Asociada Señora Fiol Matta.
El presente caso brindaba la oportunidad de interpretar *343 por primera vez el Reglamento de Métodos Alternos para la Solución de Conflictos de este Tribunal, 4 L.RR.A. Ap. XXIX, y aplicar sus disposiciones a los casos iniciados al amparo de la Ley de Menores de Puerto Rico (Ley de Me-nores), Ley Núm. 88 de 9 de julio de 1986 (34 L.P.R.A. sees. 2201 — 2238). Lamentablemente, una mayoría de los miem-bros del Tribunal, amparándose en que la naturaleza y fi-losofía que encierra la Ley de Menores es, alegadamente, incompatible con métodos alternos de solución de conflic-tos, se niega a aplicarlos a estos procesos. Por considerar que la mediación es una herramienta útil y necesaria en la resolución de ciertos casos iniciados al amparo de la Ley de Menores, respetuosamente disiento del dictamen emitido.
I
El 2 de diciembre de 2008 el Procurador de Menores presentó sendas quejas en interés de los menores C.L.R. y A.V.L., quienes para esa fecha contaban con 14 y 13 años de edad, respectivamente. Imputó a cada uno de los meno-res una falta consistente en infracción al Artículo 198 del Código Penal de Puerto Rico, 33 L.P.R.A. see. 4826. Espe-cíficamente, en las quejas se alegó que los menores C.L.R. y A.V.L., actuando en común acuerdo y mediando fuerza e intimidación, le arrebataron un bulto a la también menor de edad D.M.H. y se apropiaron de siete dólares pertene-cientes a esta última, sustrayéndolos de su inmediata pre-sencia y contra su voluntad.(1)
Durante la celebración de la vista de causa probable para presentar las querellas, los abogados de defensa de los menores solicitaron al Tribunal de Primera Instancia que el caso fuera referido a un proceso de mediación. El Procurador de Menores se opuso a tal solicitud. Argüyó que la falta imputada a los menores no era susceptible de ser *344 referida a un proceso de mediación porque equivalía a un delito de naturaleza grave.
Considerados los argumentos de ambas partes, el Tribunal de Primera Instancia emitió una resolución mediante la cual ordenó a las partes a comparecer ante la Oficina de Mediación de Mayagüez. El tribunal expresó en su resolu-ción que había efectuado su determinación luego de exami-nar la posición de los padres de los menores involucrados en los hechos que dieron origen al procedimiento y en aten-ción a que se trataba del primer proceso ante el Tribunal de Menores al cual se exponían C.L.R. y A.V.L. El Tribunal también citó en apoyo de su determinación la Regla 7.04 del Reglamento de Métodos Altemos para la Solución de Conflictos (Reglamento de Métodos Alternos) y expresó que su decisión respondía al interés de los menores y de la justicia.(2)
Inconforme con el curso de acción del Tribunal de Pri-mera Instancia, el Procurador de Menores presentó una moción de reconsideración. Alegó que la falta imputada a los menores era grave, clasificada Clase III por la Ley de Menores, y que, como tal, inelegible para un programa de desvío o medida dispositiva nominal. Sostuvo que referir el caso al proceso de mediación no cumpliría con el propósito del Reglamento de Métodos Alternos ni con el fin de la Ley de Menores de proveer tratamiento y supervisión al menor a través de una medida de libertad condicional o custodia. El Tribunal de Primera Instancia denegó la moción de reconsideración.
Como consecuencia de lo anterior, la Procuradora General presentó un recurso de revisión ante el Tribunal de Apelaciones. Dicho foro revocó la determinación del Tribu *345 nal de Primera Instancia. Concluyó que según las disposi-ciones de la Ley de Menores, por ser la falta imputada a los menores C.L.R. y A.V.L. una de Clase III, éstos no podrían ser referidos a un procedimiento de desvío. En consecuen-cia, devolvió el caso al foro de instancia para la continua-ción del procedimiento ordinario.
Inconformes con este resultado, C.L.R. y A.V.L. presen-taron oportunamente sendos recursos de revisión ante nuestra consideración. Solicitaron, además, la paralización de los procedimientos a nivel de instancia mediante sus respectivas mociones de auxilio de jurisdicción. El 21 de abril de 2009 emitimos dos resoluciones mediante las cua-les denegamos la expedición de cada uno de los recursos. Sin embargo, ante una oportuna moción de reconsidera-ción presentada por el menor C.L.R., el 8 de mayo de 2009 ordenamos la paralización de los procedimientos y le con-cedimos a la Procuradora General un término de quince días para que mostrara causa por la cual no debíamos ex-pedir el auto y revocar la determinación del Tribunal de Apelaciones. El 11 de mayo de 2009 adoptamos el mismo curso de acción en relación con la moción de reconsidera-ción presentada por el menor A.V.L. Además, ordenamos la consolidación de los casos.
El 26 de mayo de 2009 la Procuradora General compa-reció mediante su escrito en cumplimiento de nuestra or-den de mostrar causa. Posteriormente, el 29 de mayo de 2009, autorizamos la intervención de los profesores Carlos Del Valle Cruz y Francis Daniel Nina Estrella como amigos de la corte.(3) Habiendo éstos comparecido mediante es-crito, concedimos un término a la Procuradora General, se- *346 gún solicitado, para expresar su posición en relación con el mismo.
II
En la Opinión emitida hoy, el Tribunal resuelve que la mediación como método alterno de solución de conflictos no está disponible para casos iniciados al amparo de la Ley de Menores. En primer lugar, la mayoría sostiene que el Re-glamento de Métodos Alternos emitido por este Tribunal indica que dichos métodos sólo están disponibles para ca-sos civiles y criminales, sin hacer mención expresa de los casos iniciados al amparo de la Ley de Menores. Esta omi-sión denota, según la mayoría, la intención de excluir los procesos de la Ley de Menores del alcance de la regulación de los métodos alternos de solución de conflictos.
Por otro lado, la mayoría arguye que la Ley de Menores tiene un enfoque ecléctico —la habilitación o rehabilitación del menor imputado de falta y el exigirle responsabilidad por sus actos— lo cual no se cumple a través del proceso de mediación regulado por el Reglamento de Métodos Alternos. Considera la mayoría que el fin del proceso de mediación instituido en el Reglamento de Métodos Alter-nos es impartir justicia en una forma más eficiente, rápida y económica, y no necesariamente cumplir con los propósi-tos de la Ley de Menores.
Por último, aunque la mayoría reconoce que la media-ción penal podría llegar a ser “un instrumento de gran be-neficio en [el] área de asuntos de menores en Puerto Rico”, establece que actualmente no es aplicable a dichos casos, pues los mediadores certificados por el Negociado de Méto-dos Alternos para la Solución de Conflictos (Negociado de Métodos Alternos) carecen de la capacidad para lidiar con procesos de delincuencia juvenil, ya que no están adiestra-dos específicamente en esa área.
Como estableceré a continuación, ninguna de las razo- *347 nes aducidas por la mayoría sustentan la conclusión de que la mediación no es un método alterno disponible para la resolución de casos iniciados al amparo de la Ley de Menores. Lo que denota la posición del Tribunal, por el contrario, es una interpretación restrictiva del Reglamento de Métodos Alternos, disociada de la política pública esta-blecida por este Tribunal en la Regla 1.01 (4 L.RR.A. Ap. XXIX). Igualmente, revela una visión distorsionada de los métodos alternos de solución de conflictos, especialmente del proceso de la mediación. Por último, pero no menos importante, se menosprecia la capacidad de los mediadores certificados por el Negociado de Métodos Alternos para lle-var a cabo su labor, así como la capacidad de los jueces asignados a la Sala de Asuntos de Menores que discrecio-nalmente refieren dichos casos a la mediación. Veamos.
III
A. Como sabemos, los menores son personas que no han alcanzado su pleno desarrollo y madurez mental, por lo que no están sujetos a responder penalmente. Pueblo en interés menor A.L.G.V., 170 D.P.R. 987 (2007). La Ley de Menores actual adoptó “un enfoque ecléctico de acción e intervención en el cual se armoniza la responsabilidad de parens patriae del Estado, en cuanto a la rehabilitación de los ofensores, con el deber de éstos de responder por sus actos”. Pueblo en interés menor G.R.S., 149 D.P.R. 1, 11 (1999). Ello, sin desatender la responsabilidad del Estado de velar por la seguridad de la sociedad en general. Pueblo v. Suárez, 167 D.P.R. 850 (2006).
Como parte de la Exposición de Motivos de la Ley de Menores, la Asamblea Legislativa expresó:
... [E]sta ley adopta como marco filosófico del Sistema de Justicia Juvenil el humanismo dentro de un enfoque ecléctico de acción e intervención, donde se compatibilicen la propuesta *348 rehabilitadora y el poder y responsabilidad posible inherente al Estado de brindarle toda oportunidad rehabilitativa, así como exigirle al menor un quantum de responsabilidad para dirigir sus actos y responder por éstos. ... [E]sta ley incorpora los derechos básicos que se han ido extendiendo al ámbito ju-venil con el propósito de garantizar un procedimiento justo, rápido y eficaz sin que por ello se altere el carácter especial del proceso.
Toda ayuda al menor, que propenda a su rehabilitación, debe concientizarlo de la importancia del acto cometido llevándolo a percatarse de éste, sus implicaciones, la responsabilidad individual y comunitaria envuelta, donde se propicie a su vez res-peto a la ley existente. (Enfasis suplido.) Exposición de Motivos de la Ley Núm. 88, supra, 1986 Leyes de Puerto Rico, 285-286.
Así, pues, surge claramente de la Exposición de Motivos de la Ley de Menores que el propósito del legislador al aprobar dicha ley fue adoptar como marco filosófico el hu-manismo-, es decir, el enaltecimiento de la dignidad hu-mana por medio de la integración de los valores humanos de más alto calibre al trato de los asuntos de menores a través de un procedimiento que fuera justo, rápido y eficaz. En dicho proceso, el menor debe ser concientizado de la importancia del acto antijurídico en que ha incurrido de manera que éste asuma la responsabilidad que implican sus acciones y se propicie el respeto a la ley existente.
Como parte del reconocimiento de la Ley de Menores de que éstos no responden penalmente, el Artículo 37(a) espe-cifica que “[l]os procedimientos y las órdenes o resoluciones del juez bajo esta ley no se considerarán de naturaleza criminal ...”. Leyes de Puerto Rico, supra, pág. 301. Basados en el texto de la ley, es que en innumerables ocasiones hemos definido los procedimientos al amparo de la Ley de Menores como unos de carácter civil sui géneris. Pueblo en interés menor K.J.S.R., 172 D.P.R. 490 (2007); Pueblo en interés menor A.L.G.V., supra; Pueblo v. Suárez, supra; Pueblo en interés menor G.R.S., supra, pág. 10; Pueblo en interés menor R.H.M., 126 D.P.R. 404, 424 (1990). Así, los *349 casos iniciados al amparo de la Ley de Menores siguen siendo casos civiles, con ciertas particularidades que le im-primen un carácter sui generis.
Siendo los casos de asuntos de menores de naturaleza civil, debemos auscultar si la mediación, como un método alterno de solución de conflictos, está disponible para la dilucidación de éstos. Al encaminarnos en esa tarea, debe-mos tener presente los propósitos y objetivos de la Ley de Menores de proveer un procedimiento justo, rápido y eficaz en el cual el menor reconozca y asuma su responsabilidad. Igualmente, debemos examinar la naturaleza de la media-ción y la política pública establecida por este Tribunal en relación con los métodos altemos de solución de conflictos en nuestro ordenamiento.
IV
A. En términos generales, y sin ánimo de agotar las distintas acepciones del concepto, la mediación puede ser descrita como un proceso mediante el cual las partes, con la ayuda de un tercero neutral, aíslan los conflictos entre sí para desarrollar alternativas y, en última instancia, forjar un acuerdo consensual que satisfaga sus necesidades. J. Folberg & A. Taylor, Mediation: A Comprehensive Guide to Resolving Conflicts Without Litigation, San Francisco, Jo-ssey-Bass Publishers, 1984, pág. 7. Véase, además, M.E. Negrón Martínez y otros, Un modelo puertorriqueño de me-diación de conflictos, Puerto Rico, Lexis Nexis de Puerto Rico, 2001, pág. 12. Con la asistencia de dicho interventor neutral, los participantes de los procesos de mediación trasforman el conflicto mediante la reconciliación de los intereses que les vinculan. D. Nina, Mediación: Teoría y Práctica, Puerto Rico, Ed. Situm, 2006, págs. 56-57. Dicha reconciliación se logra, a su vez, mediante la negociación, íd., pág. 57.
Varios principios guían los procesos de mediación. Entre *350 éstos se destacan la soberanía, voluntad e interdependen-cia de las partes y la confidencialidad del proceso. Nina, op. cit., págs. 57-58. Se trata de lograr un fin dual de reducir conflictos y resolver disputas. Folberg y Taylor, op. cit., pág. 8. En relación con el elemento de interdependencia, el profesor Nina expresa que “el vínculo que une a las partes en conflicto por encima del conflicto en sí mismo, es un factor primordial para entender el proceso de mediación”. Nina, op. cit, pág. 59.
La índole transformativa de los procesos de mediación es particularmente evidente en los casos de naturaleza penal. Como sabemos, nuestro ordenamiento en materia penal se funda sobre una teoría punitiva según la cual la infracción de la ley penal constituye una ofensa a la socie-dad que le corresponde al Estado encausar y, de ser nece-sario, castigar. L.F. Gordillo Santana, La Justicia Restau-rativa y la Mediación Penal, España, Iustel, 2007, pág. 184. En dichos procedimientos penales tradicionales las partes son el Estado y el ofensor, mientras que la víctima asume un rol pasivo, muchas veces como testigo. M. Gertz, The Road Less Traveled: Using ADR to Help Reform First-Time Juvenile Offenders, 8 Cardozo J. Conflict Resol. 339, 351-52 (Fall 2006).
La teoría restaurativa, por el contrario, propone un cambio en dicho paradigma y se enfoca en el daño causado a la víctima y en cómo enmendarlo. M. Liebmann, Restorative Justice: How It Works, Pennsylvania, Jessica Kingsley Publishers, 2007, pág. 25. En conformidad con tal princi-pio, los procesos de mediación alternativos al encausa-miento penal persiguen que tanto el ofensor como la víc-tima asuman roles activos en la negociación. El fin de dicha negociación es, a su vez, reparar el daño material y psicológico a la víctima, mientras se hace al ofensor cons-ciente del impacto de su conducta en la persona de ésta, íd., pág. 26. Así, el objetivo de los procesos de mediación es que el ofensor asuma responsabilidad por sus actos, ad- *351 quiera la oportunidad de reparar el daño causado y, como resultado, corrija su conducta con el propósito de evitar re-incidir en la misma. Id., págs. 26-27. La víctima, por su parte, ganaría la oportunidad de dialogar con el ofensor y recibir una disculpa de parte de éste, además de la resti-tución de su propiedad, de ser necesaria. Id., pág. 28.
Los procesos de mediación han probado ser útiles en casos de delincuencia juvenil, particularmente en aquellos de primeros ofensores. Además de ser más rápido e informal y, como tal, menos costoso, los comentaristas esbozan que las ventajas del proceso de mediación consisten en que a través de éste el menor ofensor adquiere consciencia de sus actos y del daño causado a su víctima y se responsabi-liza por él. S.A. Beauregard, Court-Connected Juvenile Victim-Offender Mediation: An Appealing Alternative for Ohio’s Juvenile Delinquents, 13 Ohio St. J. on Disp. Resol. 1005, 1012 — 13 (1998). Al igual que en los procesos de me-diación penal, en la mediación de asuntos de menores los ofensores tienen la oportunidad de reconocer o disculparse por sus acciones, entender la dimensión humana de su comportamiento, valorar a la víctima como un igual y aprender los costos que conlleva la violación de los dere-chos de los demás. Id. Esto, a su vez, causa que éstos sean menos propensos a reincidir. Id. Véase, además, Hon. R. Bennet Burkemper, Jr., Restorative Justice in Missouri’s Juvenile System, 63 J. Mo. B. 128 (2007).
En suma, los procesos de mediación en el área de asun-tos de menores han probado ser una herramienta útil y beneficiosa para las partes involucradas en el conflicto, tanto la víctima como el menor. A través de dicho método se alcanzan, igualmente, los propósitos de las leyes que regulan los casos de asuntos de menores y delincuencia juvenil, sin necesariamente utilizar la teoría punitiva tradicional. Esta nueva perspectiva habilita al ofensor a reconocer el valor humano de la víctima a través de la con- *352 sideración de las consecuencias de sus actos sobre ésta, además de permitir que éste asuma responsabilidad por sus acciones a través del arrepentimiento y disculparse con la víctima por el mal causado.
B. Los primeros esfuerzos formales en Puerto Rico para la implantación de métodos alternos de solución de conflictos comenzaron a principio de la década de 1980 cuando la Asamblea Legislativa, a través de la Ley Núm. 19 de 22 de septiembre de 1983 asignó fondos del Tesoro del Estado Libre Asociado de Puerto Rico para estos fines e instruyó a este Tribunal a adoptar, “en el ejercicio de su poder de reglamentación general”, las reglas necesarias para la operación de los programas que servirían como cen-tros informales para la resolución de disputas. 4 L.P.R.A. secs. 532-532a. En relación con la naturaleza de los casos que podrían ser referidos a los centros cuya creación se autorizó mediante la Ley Núm. 19, se estableció lo si-guiente:
Los centros o programas que se establezcan ... [p]roveerán para la pronta resolución de determinados asuntos de natura-leza civil o criminal de manera informal, sencilla y sin la uti-lización de procedimientos adversativos. 4 L.P.R.A. see. 532c(a).
En cumplimiento con el mandato de la Ley Núm. 19, este Tribunal aprobó mediante Resolución de 25 de junio de 1998, el Reglamento de Métodos Alternos, posterior-mente enmendado mediante Resolución de 4 de marzo de 2005. Véanse: In re Aprobación y Vigencia del Reglamento de Métodos Alternos para la Solución de Conflictos, 1998 T.S.P.R. 79; In re Enmdas. Regl. Métodos Alternos, 164 D.P.R. 45 (2005). Éste constituyó el primer acto formal para regular la práctica de la mediación en nuestra jurisdicción. Nina, op. cit., pág. 5.
El Reglamento de Métodos Alternos declara como polí-tica pública de la Rama Judicial “fomentar la utilización de *353 mecanismos complementarios al sistema adjudicativo tra-dicional con el fin de impartir justicia en una forma más eficiente, rápida y económica”. Regla 1.01 del Reglamento de Métodos Altemos, ante, 4 L.RR.A. Ap. XXIX. Para im-plantar dicha política pública, el Reglamento dispone la creación del Negociado de Métodos Alternos y reconoce tres métodos alternos de solución de conflictos, a saber: la me-diación, el arbitraje y la evaluación neutral. Reglas 2.01— 2.02 (4 L.P.R.A. Ap. XXIX).
En relación con la controversia ante nuestra considera-ción, el Reglamento de Métodos Alternos define la media-ción como un “[p]roceso de intervención, no adjudicativo, en el cual un [interventor neutral] ayuda a las personas en conflicto a lograr un acuerdo que les resulte mutuamente aceptable”. Regla 1.03(c), 4 L.P.R.A. Ap. XXIX. La Regla 7.01(b) añade que “[l]a mediación tiene como propósitos promover la participación de personas en la solución de sus conflictos y que las partes involucradas asuman responsa-bilidad en el cumplimiento de los acuerdos”. 4 L.P.R.A. Ap. XXIX.
En conformidad con las disposiciones de la Ley Núm. 19, y de acuerdo con la teoría de la mediación, el Regla-mento de Métodos Alternos establece un proceso de media-ción voluntario y confidencial. Así, una vez referida una controversia a mediación, las partes sólo vienen compeli-das a comparecer a una sesión inicial de orientación, siendo potestad de éstas decidir voluntariamente si se so-meten al proceso. Regla 3.05 (4 L.P.R.A. Ap. XXIX). De ello ocurrir, y en caso de que las partes logren un acuerdo, el mismo será obligatorio y las partes lo podrán ejecutar como cualquier otro contrato escrito. Regla 5.02 (4 L.P.R.A. Ap. XXIX). No obstante, cuando es el Tribunal el que re-fiere el caso a mediación, como ocurrió en la controversia ante nuestra consideración, el mediador o mediadora, luego de dar por terminado el proceso, debe informar el *354 acuerdo alcanzado al Tribunal conforme la Regla 5.01.(4) Regla 7.11 (4 L.P.R.A. Ap. XXIX).
De otra parte, la potestad discrecional de los tribunales para determinar si referir un caso a un proceso de media-ción se canaliza a través del inciso (b) de la Regla 7.02 el cual establece que “[e]n los casos pendientes ante el tribunal, éste determinará si un caso es adecuado para referirlo a mediación. El tribunal, además, podrá acoger peticiones de las partes para que un caso sea referido a mediación”. 4 L.RR.A. Ap. XXIX. Al proponer el texto citado, el Secreta-riado de la Conferencia Judicial comentó en su informe que la Regla 7.02 destaca que “el tribunal retendrá siempre la prerrogativa de referir un caso al proceso de mediación”. (Énfasis suplido.) Secretariado de la Conferencia Judicial, Medios Alternos de Resolución de Disputas, Informe Final y Reglamento, junio de 1996, pág. 88. En ese mismo tenor, la Regla 7.04 es clara al establecer que “[e] 1 tribunal podrá referir cualquier caso que tenga ante su consideración, o parte del mismo, a mediación, ya sea por iniciativa propia o a solicitud de alguna de las partes”. (Énfasis suplido.) 4 L.P.R.A. Ap. XXIX.
Ahora bien, tal discreción no se ejerce en un vacío. El *355 inciso (c) de la Regla 7.02 establece que al determinar si referir un caso a mediación, el tribunal debe utilizar los criterios establecidos por las Reglas 3.01 y 3.02. La pri-mera de éstas es de particular importancia para la contro-versia ante nuestra consideración, por lo que conviene ci-tarla en toda su extensión:
(а) Al seleccionar los casos para ser referidos a métodos al-ternos para la solución de conflictos, el tribunal deberá consi-derar los factores siguientes:
(1) La naturaleza del caso.
(2) La naturaleza de la relación entre las partes.
(3) La disposición de las partes para negociar.
(4) La posibilidad de que la litigación afecte adversamente la relación.
(5) Los riesgos a la integridad física de los participantes o del interventor o de la interventora neutral.
(б) La necesidad de proveer remedios de emergencia antes del referimiento.
(7)Los costos y riesgos de la litigación. Regla 3.01 del Re-glamento de Métodos Alternos, 4 L.RR.A. Ap. XXIX.
El primero de los criterios enumerados por la Regla 3.01 necesariamente nos refiere, a su vez, a la Regla 7.02, la cual enumera los casos elegibles para ser referidos a mediación. En su inciso (a), dicha regla expone que “serán elegibles para mediación los casos civiles y los casos crimi-nales de naturaleza menos grave, que puedan transigirse de acuerdo con las Reglas de Procedimiento Criminal”. (Enfasis suplido). Regla 7.02(a) del Reglamento de Méto-dos Alternos, 4 L.P.R.A. Ap. XXIX. Se trata de una norma general de elegibilidad. Secretariado de la Conferencia Judicial, Medios Alternos de Resolución de Disputas, Informe Final y Reglamento, supra, pág. 89.
La Regla 7.03(a)-(c) complementa tal disposición al ex-cluir expresamente de los procesos de mediación los casos criminales que no sean transigibles bajo las Reglas de Pro-cedimiento Criminal; los casos que impliquen una reclama-ción de derechos civiles o de alto interés público, excepto cuando medie el consentimiento explícito de las partes, y *356 aquellos en que una parte no sea capaz de proteger efecti-vamente sus intereses durante la negociación. 4 L.P.R.A. Ap. XXIX. La exclusión de estos tipos de casos responde a que se entiende que no son apropiados para ser referidos a mediación ya que “implican unos riesgos o conllevan unos resultados que requieren la intervención del tribunal”. Se-cretariado de la Conferencia Judicial, Medios Alternos de Resolución de Disputas, Informe Final y Reglamento, supra, pág. 89.
Al proponer la Regla 3.01 antes citada, el Secretariado de la Conferencia Judicial añadió que “[l]a enumeración que se ha hecho en este comentario es meramente ilustra-tiva y no impide que los jueces se abstengan de referir casos pertenecientes a las categorías aquí mencionadas o que refieran casos de otras categorías que no estén expresa-mente excluidas por estas reglas”. (Enfasis suplido.) Secre-tariado de la Conferencia Judicial, Medios Alternos de Re-solución de Disputas, Informe Final y Reglamento, supra, pág. 61. Es decir, que la lista de casos elegibles para parti-cipar de un proceso de mediación no es taxativa sino que reside en la discreción del tribunal referir controversias ante su consideración a procesos de mediación, siempre y cuando las mismas no estén excluidas expresamente de dicho procedimiento.
V
A. Como establecimos anteriormente, mediante la Ley Núm. 19 el legislador dispuso que, en general, tanto los casos de naturaleza civil como los criminales serían elegi-bles para participar de los métodos alternos de solución de conflictos. Este Tribunal, por su parte, en el ejercicio de su poder de reglamentación y dentro de los parámetros dis-puestos por el legislador mediante la Ley Núm. 19, esta-bleció los criterios que limitarían la discreción de los foros *357 judiciales al ejercer su prerrogativa de referir los casos a métodos alternos de solución de conflictos.
Si bien el Reglamento de Métodos Alternos adoptado no provee expresamente para el referido de los casos de me-nores a procesos de mediación, tampoco lo prohíbe. Por el contrario, el Reglamento de Métodos Alternos provee para el referido de casos de naturaleza civil, categoría a la que pertenecen los casos de asuntos de menores. Igualmente, al examinar la Regla 7.03 vemos que ésta no excluye los casos de asuntos de menores de ser referidos al método alterno de la mediación. Nada hay en el historial de la aprobación del Reglamento que apunte a que hubo una intención expresa de dejar fuera de su aplicación las dis-putas que involucren a menores. Ante la ausencia de tal exclusión, la práctica, según lo consignan los datos oficiales de los centros de mediación de conflictos, es que se han referido numerosos casos de menores a procesos de mediación. El informe de datos agregados para el año fiscal 2005-2006 evidencia que de los 13,611 casos atendidos por los centros de mediación durante dicho año, 11,123 fueron “referidos de la comunidad”. En dicho reglón se hizo cons-tar que los “referidos de la comunidad” incluían referidos del Procurador de Menores. Véase Negociado de Métodos Alternos para la Solución de Conflictos, Datos Agregados de los Centros de Mediación de Conflictos para el Año Fiscal 2005-2006. (5)
Como hemos apuntado, la Regla 7.02 del Reglamento de Métodos Alternos establece una norma general de elegibi-lidad y deja a discreción del tribunal la determinación de referir a un proceso de mediación “cualquier caso que tenga ante su consideración”, siempre que el mismo no per-tenezca a una de las categorías excluidas de acuerdo con la Regla 7.03. No estando los casos de menores expresamente excluidos por la Regla 7.03 del Reglamento de Métodos Al-temos, *358 (6) es preciso concluir que éstos son elegibles para ser referidos a un proceso de mediación.
Es menester destacar, no obstante, que el hecho de que los casos de asuntos de menores sean elegibles para ser referidos a un proceso de mediación, no implica necesaria-mente que todos los casos sometidos a dicha jurisdicción sean apropiados para ser referidos a ese método alterno. La decisión de referir un caso de menores al proceso de mediación queda en la sana discreción del juez de la Sala de Asuntos de Menores, guiado por los criterios esbozados en la Regla 3.01. Así, la naturaleza del caso, la naturaleza de la relación entre las partes, la disposición de éstas a someterse al proceso y los costos y riesgos del proceso or-dinario, entre otros factores enumerados en la Regla 3.01, unidos a la capacidad y experiencia en esta área de los jueces y juezas de las Salas de Asuntos de Menores, le per-mitirán determinar cuáles de estos casos son apropiados para ser referidos a la mediación.
El referido de casos de asuntos de menores al método alterno de la mediación, además de estar fundamentado en el Reglamento de Métodos Alternos y en la política pública de este Tribunal, es cónsono con los propósitos de la Ley de Menores en nuestra jurisdicción, particularmente en cuanto a fomentar la habilitación y rehabilitación del me-nor mientras se le exige responsabilidad por sus actos. Como vimos, dichos principios son los que inspiran los pro-cesos de mediación en el contexto de casos de delincuencia juvenil. Y es que, sin duda, la naturaleza del proceso de mediación lo hace idóneo para dilucidar ciertos conflictos en que se vean involucrados menores, particularmente si se trata de una primera infracción. “Cuando, como en la *359 materia, se tiene claro que la solución informal del con-flicto es mucho más adecuada y la formalizada puede per-judicar el fin último perseguido, es comprensible y ade-cuado ... procur[ar] habilitar cauces para reconducir lo antes posible la cuestión a ámbitos de solución de conflic-tos más informales que los procesales.” J. Cuello Contreras, El nuevo derecho penal de menores, Madrid, Cuader-nos Civitas, 2000, pág. 90.
B. A la luz de lo antes expuesto, es forzoso concluir que erra la mayoría al resolver que el método alterno de la mediación es inaplicable a los casos de asuntos de menores. En primer lugar, el Reglamento de Métodos Al-ternos sí contempla el referido de ese tipo de caso a la mediación, pues todos los casos civiles son, en principio, sujetos a ser referidos a dicho método alterno. Aun si, para propósitos de argumentación, expresáramos que el Regla-mento no provee para el referido de casos de asuntos de menores a la mediación —lo que es claramente erróneo— este Tribunal podría ordenarlo así. Después de todo, dicho reglamento fue aprobado al amparo del poder general de reglamentación del Tribunal sobre la administración de la justicia. Por lo tanto, si este Tribunal entendiera apropiado el referido de casos de asuntos de menores al proceso de mediación, podría así disponerlo, de ser necesario. Así pues, no es cuestión de poder, sino de querer.(7)
Por otro lado, no hay duda de que el modelo de media-ción transformativa que utiliza como base la justicia res-taurativa cumple a cabalidad con los propósitos y objetivos *360 de la Ley de Menores. En dicho proceso el menor ofensor adquiere consciencia de sus actos y del daño causado a su víctima, y se responsabiliza por el mismo a través de un procedimiento justo, rápido y eficaz, tal y como lo establece la Exposición de Motivos de dicha ley.
En la Opinión del Tribunal se hace hincapié en la ale-gada necesidad del castigo para cumplir con la rehabilita-ción del menor, por lo que el proceso de mediación, según la mayoría, no cumple con los propósitos de la Ley de Menores. No obstante, dicha visión policíaca y punitiva de la ley soslaya el hecho de que a través de la mediación es posible “[concientizar al menor] de la importancia del acto cometido llevándolo a percatarse de éste, sus implicacio-nes, la responsabilidad individual y comunitaria envuel-ta”,(8) sin necesariamente someterlo a una medida disposi-tiva condicional por un término de hasta cuatro años o de custodia en una institución juvenil por un término de hasta tres años. No podemos olvidar que el marco filosófico de la Ley de Menores es el humanismo, por lo que se deben examinar vías alternas “fuera del órgano judicial para brindar la atención oportuna” a estos jóvenes. Véase Expo-sición de Motivos de la Ley Núm. 88, supra. Igualmente, en la medida en que a través del proceso de mediación trans-formativa el menor reconoce su falta y el daño causado —lo que ha sido demostrado reduce la reincidencia de estos transgresores— se cumple con el fin del Estado de garan-tizar un orden social y proteger el bienestar de la comunidad.
Por último, el argumento de la mayoría sobre la alegada falta de adiestramiento en esta área de los mediadores cer-tificados por el Negociado de Métodos Alternos deja de lado que a través del Reglamento de Certificación y Educación Continua Relacionado con los Métodos Alternos para la So- *361 lución de Conflictos(9) se establece un esquema detallado de requisitos que debe cumplir todo aspirante a ser certifi-cado como mediador. Dicho esquema garantiza que los me-diadores certificados tienen la preparación necesaria para servir como interventor neutral en cualquier conflicto que se le presente, incluso casos de asuntos de menores. Ade-más, no debe descartarse la experiencia que han adquirido estos profesionales en los más de diez años de haberse es-tablecido el Reglamento de Métodos Alternos, en el trans-curso de los cuales, continuamente, se han referido casos de asuntos de menores a la mediación. Así surge de los relatos de los Profesores Nina Estrella y del Valle Cruz a través del escrito de amicus curiae conjuntamente presen-tado, e igualmente del texto de la Dra. Mildred Enid Ne-grón Martínez, citado anteriormente.(10)
Así, pues, establecida la aplicabilidad de los procesos de mediación a los casos de asuntos de menores, nos resta examinar los hechos del presente caso para auscultar si erró el Tribunal de Apelaciones al revocar la determinación del Tribunal de Primera Instancia de referir el presente caso a un proceso de mediación.
C. Como adelantáramos en la relación de hechos, en este caso se presentaron en interés de los menores C.L.R. y *362 A.V.L. sendas quejas en las que se les imputó haber infrin-gido el Artículo 198 del Código Penal. De un análisis de los criterios de la Regla 3.01 del Reglamento de Métodos Al-ternos surge que el presente caso, además de elegible, es también apropiado para ser referido a un proceso de mediación.
Primeramente, los menores involucrados y sus padres, incluso los padres de la víctima, expresaron ante el Tribunal de Primera Instancia su conformidad con el referido del caso al proceso de mediación. Así, tanto la víctima como el ofensor deseaban solucionar su conflicto a través del pro-ceso de la mediación. En cuanto a la naturaleza del caso(11) es preciso tener presente que lo que se imputa a los meno-res recurrentes es la apropiación de siete dólares pertene-cientes a una compañera de estudio. Se trata de un con-flicto nacido en el contexto escolar, en el cual los menores seguirán interrelacionándose aún con posterioridad a la re-solución del presente caso. Aunque la conducta imputada a los recurrentes es constitutiva de falta, en el balance de intereses es preferible brindar a éstos una oportunidad de reconocer lo errado de su proceder y asumir la responsabi-lidad por sus actos a través del proceso de la mediación, sin someterlos a un procedimiento estigmatizador y de natu-raleza punitiva como pudiese resultar el procedimiento ordinario.
Ante estos hechos, y siendo la presente la primera vez que C.L.R. y A.V.L. se exponen a un procedimiento ante el Tribunal de Menores, es preciso concluir que las circuns-tancias del presente caso ameritan que se les brinde la *363 oportunidad de solucionar este conflicto a través de la mediación. Nuestro sentido de justicia nos debería compe-ler a particularizar la controversia ante nuestra considera-ción y a sopesar que, a pesar de lo reprochable de la con-ducta imputada a C.L.R. y A.V.L., la misma no merece exponerlos de primera intención a la imposición de una medida dispositiva condicional o de custodia al amparo de las disposiciones de la Ley de Menores. Si el proceso de mediación se ve interrumpido o no culmina satisfactoria-mente, el caso revertiría al foro judicial para la continua-ción del procedimiento ordinario. En todo caso, el Tribunal examinará el acuerdo alcanzado, velando por que éste ade-lante los intereses públicos implicados del bienestar del menor y la seguridad pública.
En conclusión, soy del criterio que analizadas las cir-cunstancias del presente caso según los criterios de la Re-gla 3.01 del Reglamento de Métodos Alternos, no abusó de su discreción el Tribunal de Primera Instancia al referirlo al proceso de mediación. Erró el Tribunal de Apelaciones al revocar dicho proceder. En consecuencia, revocaría la de-terminación del Tribunal de Apelaciones recurrida, y de-volvería el presente caso para la continuación de los proce-dimientos en conformidad con lo aquí expuesto. Por no ser ese el curso seguido por la mayoría, respetuosamente disiento del dictamen emitido.

 La menor D.M.H. es compañera de estudio de los recurrentes.

 La Regla 7.04(a) del Reglamento de Métodos Altemos para la Solución de Conflictos (Reglamento de Métodos Alternos) establece que “[e]l tribunal podrá refe-rir cualquier caso que tenga ante su consideración, o parte del mismo, a mediación, ya sea por iniciativa propia o a solicitud de alguna de las partes”. (Enfasis suplido.) 4 L.P.R.A. Ap. XXIX.

 Accedimos a la petición de los profesores Nina Estrella y del Valle Cruz por estimar que se cumplían a cabalidad los requisitos que hemos dispuesto para consi-derar una solicitud de esta naturaleza, para un caso como éste de carácter novel. Su comparecencia abona a que este Tribunal se encuentre “mejor informado para hacer la más cumplida justicia”. Pueblo ex rel L.V.C., 110 D.P.R. 114, 129 (1980). Véase, además, Regla 43 del Reglamento de este Tribunal, 4 L.P.R.A. Áp. XXI-A.

 La Regla 5.01 del Reglamento de Métodos Alternos, 4 L.RR.A. Ap. XXIX, establece
“[Regla 5.01.] Acuerdos.-—
“(a) Todos los acuerdos tomados dentro de un método alterno para la solución de conflictos deberán constar por escrito.
“(b) Cuando las partes lleguen a un acuerdo o a una transacción dentro de un método alterno para la solución de conflictos, o como resultado del mismo, informa-rán por escrito de tal circunstancia al tribunal.
“(c) Los términos específicos de los acuerdos deberán notificarse por escrito al tribunal, a menos que las partes acuerden lo contrario.
“No obstante, cuando el asunto en controversia esté revestido de un alto interés público, las partes tendrán que divulgar al tribunal el contenido del acuerdo o la transacción. En caso de que el acuerdo o la transacción afecte el bienestar o los derechos de menores o incapacitados, se seguirá el tramite dispuesto por ley.”
A base de dicha regla, el escrito del amicus curiae presentado por los profesores Nina Estrella y del Valle Cruz arguye que la práctica que se sigue en las Salas de Asuntos de Menores es que, una vez se llega a un acuerdo en el proceso de mediación, las partes, incluso la Procuradora de Menores, comparecen ante el juez para que éste apruebe dicho acuerdo. De no aprobarse éste, el proceso sigue su curso normal según las Reglas de Procedimiento para Asuntos de Menores.

 Disponible en http://www.ramajudicial.pr/negmed/Centros_Mediacion/datos/ CMC05-06.pdf

 Nótese que, contrario al Capítulo 7 sobre Mediación, los casos de menores están expresamente excluidos de los procesos de arbitraje regulados por el Capítulo 8 del Reglamento de Métodos Alternos para la Solución de Conflictos. Regla 8.03 del Reglamento de Métodos Altemos, 4 L.P.R.A. Ap. XXIX. Tal exclusión expresa derrota el argumento de la Procuradora General de que a pesar de ser adoptado una década después de la vigencia de la Ley de Menores de Puerto Rico, el Reglamento de Mé-todos Alternos no la contempló.

 Incluso, el Proyecto del Senado 1108 de 8 de septiembre de 2009 así lo reco-noce:
“Esta Asamblea Legislativa reconoce que el Estado debe ofrecer a los menores nuevas alternativas de tratamiento que propicien la rehabilitación y subsiguiente adaptación del menor en la sociedad. Después de todo, como parte de la discreción judicial sobre la forma de adjudicar un caso, muy bien podría determinarse que el mecanismo más acertado y conveniente es referir el mismo a mediación en lugar de continuar el trámite tradicional.” (Enfasis suplido.)
De esta manera, la Asamblea Legislativa reconoce el poder que la mayoría se niega a utilizar.

 Véase Exposición de Motivos de la Ley Núm. 88 de 9 de julio de 1986 (1986 Leyes de Puerto Rico 284, 286).

 Dicho reglamento fue aprobado por el Negociado de Métodos Alternos al amparo de la Regla 2.02 del Reglamento de Métodos Altemos. Disponible en http:// www.ramajudicial.pr/NegMed/Recursos/Reglamentos/docs/RegCertificacion_1999 .pdf

 El escrito del amicus curiae destaca que durante el período en el cual el profesor Nina Estrella dirigió la Unidad de Mediación y Arbitraje de la Facultad de Derecho Eugenio María de Hostos, entre el 2004 y el 2007, atendió cerca de trescien-tos casos a través del proceso de mediación, de los cuales alrededor del 40% se trataba de casos de asuntos de menores. Específicamente, entre el 2006 y el 2007, indica que cerca del 50% de dichos casos eran referidos por la Oficina de la Procura-dora de Menores de Mayagüez. Por otro lado, la Dra. Negrón Martínez asegura que su experiencia ha sido que los Centros de Mediación en el país “cubren un amplio espectro de controversias de familia, comunales, comerciales, escolares, así como asuntos criminales menos graves y casos de menores involucrados en controversias que están bajo la jurisdicción de la Sala de Menores de nuestro Tribunal de Primera Instancia”. (Enfasis suplido.) M.E. Negrón Martínez y otros, Un modelo puertorri-queño de mediación de conflictos, Puerto Rico, Lexis Nexis de Puerto Rico, 2001, pág. 20.

 La Procuradora General arguye, haciéndose eco de lo resuelto por el Tribunal de Apelaciones, que por este caso tratarse de la imputación de una falta Clase III, la mediación no está disponible, pues ese tipo de falta no es susceptible de enviarse a un procedimiento de desvío. Dicha postura soslaya el hecho de que el procedi-miento de desvío al amparo de la Ley de Menores de Puerto Rico y el proceso de mediación dispuesto por el Reglamento de Métodos Alternos para la Solución de Conflictos son de distinta naturaleza y se encuentran regulados por estatutos independientes. La clase de falta imputada es un factor más que se debe sopesar al momento de referir un caso al proceso de mediación, sin que una clasificación espe-cífica impida, por sí sola, la dilucidación del caso a través de dicho método alterno.